UNITED STATES JUDICIAL PANEL
on
MULTIDISTRICT LITIGATION

IN RE: NATROL, INC., GLUCOSAMINE/CHONDROITIN
MARKETING AND SALES PRACTICES LITIGATION    MDL No. 2528

TRANSFER ORDER

**Before the Panel**: Pursuant to 28 U.S.C. § 1407, defendant Natrol, Inc., moves to centralize this litigation in the Central District of California. The litigation consists of the three actions listed on Schedule A, which are pending in the Southern District of California, the Northern District of Illinois, and the Eastern District of New York. Since the filing of the motion, the Panel has been notified of one related action.[1] Plaintiffs in all actions on the motion oppose centralization or, alternatively, request selection of the Eastern District of New York or the District of Maryland.

Plaintiffs agree that coordinated proceedings in a single forum are appropriate, but contend that centralization is unnecessary principally because there are pending motions to transfer under Section 1404, which, if granted, will result in all actions proceeding in the Eastern District of New York. In response, Natrol argues that centralization is appropriate because plaintiffs' Section 1404 transfer motions are not likely to be granted. In Natrol's view, transfers under Section 1404 are unlikely because the actions pending outside of the Eastern District of New York have no connection with that district and the location is highly inconvenient for Natrol, which has its headquarters in California. Natrol intends to oppose the motions, which have been stayed or continued pending these Panel proceedings.

On this record, we conclude that the pendency of Section 1404 motions is not an obstacle to centralization. Plaintiffs are correct that we previously have denied centralization when there is a "reasonable prospect" that Section 1404 transfer will eliminate the multidistrict character of the litigation.[2] We also have explained, however, that the pendency of Section 1404 motions, alone, is not dispositive, and we look to other circumstances to determine whether there is a reasonable prospect that the Section 1404 motions will resolve the difficulties posed by duplicative multidistrict litigation – for example, the amenability of counsel to Section 1404 transfer, orders addressing transfer in the underlying actions, and the likelihood of potential tag-along actions. *See In re:*

---

[1] This and any other related actions are potential tag-along actions. *See* Panel Rules 1.1(h), 7.1 and 7.2.

[2] *See, e.g., In re: Gerber Probiotic Prods Mktg. & Sales Practices Litig.*, 899 F. Supp. 2d 1378, 1379-80 (J.P.M.L. 2012); *In re: Best Buy Co., Inc., California Song-Beverly Credit Card Act Litig.,* 804 F. Supp. 2d 1376, 1378 (J.P.M.L. 2011).

-2-

*Schnuck Markets, Inc., Customer Data Breach Security Litig.*, — F. Supp. 2d —, 2013 WL 5670861, at *1 & nn. 2-4 (J.P.M.L. Oct. 18, 2013); *In re: Truvia Natural Sweetener Mktg. and Sales Practices Litig.*, — F. Supp. 2d —, 2014 WL 585552, at *2 (J.P.M.L. Feb. 12, 2014). Here, there are at least three actions pending outside the suggested transferee districts. Rulings on the pending Section 1404 motions have not been issued and do not appear imminent. The circumstances presented in this docket – which thus far include one potential tag-along action, a related state court action, and nationwide sales of an allegedly widely-used dietary supplement – suggest that additional actions also are possible.

Plaintiffs also contend that centralization is not warranted because voluntary coordination of discovery is practicable given the lack of complexity and the limited number of actions and involved counsel. The record shows, however, that complex scientific issues concerning the effectiveness of the active ingredients in the Natrol products – in particular, glucosamine hydrochloride and chondroitin sulfate – will be litigated and many of the same clinical studies will be challenged. In our view, extensive common expert discovery and one or more *Daubert* hearings likely will be required. *See In re: GNC Corp. TriFlex Prods. Mktg. & Sales Practices Litig. (No. II)*, — F. Supp. 2d —, 2013 WL 6825601, at *1 (J.P.M.L. Dec. 17, 2013); *In re: Nutramax Cosamin Mktg. & Sales Practices Litig.* — F. Supp. 2d —, 2013 WL 6825613, at *1 (J.P.M.L. Dec. 17, 2013). Additionally, the proposed nationwide class in the Northern District of Illinois action overlaps with the proposed state classes in the Southern District of California and the Eastern District of New York actions, and the potential tag-along action. There is no overlap in plaintiffs' counsel, which will make voluntary coordination of these issues difficult.

On the basis of the papers filed and the hearing session held, we find that these actions involve common questions of fact, and that centralization of this litigation will serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. All actions share factual questions relating to allegations that Natrol has made false and misleading advertising claims regarding the effectiveness of Natrol joint health supplements.[3] Centralization will eliminate duplicative discovery; prevent inconsistent pretrial rulings (in particular with respect to class certification and discovery issues); and conserve the resources of the parties, their counsel and the judiciary.

After weighing all factors, we have selected the District of Maryland as transferee district for this litigation. Selection of the District of Maryland enables us to assign this litigation to the transferee judge who presides over two MDLs that raise similar factual and legal claims concerning the effectiveness of dietary supplements containing glucosamine and chondroitin in promoting joint health – MDL No. 2491, In re: GNC Corp. TriFlex Products Marketing and Sales Practices Litigation (No. II), and MDL No. 2498, In re: Nutramax Cosamin Marketing and Sales Practices

---

[3] The Natrol joint health products at issue include Natrol Glucosamine Chondroitin MSM; Natrol Glucosamine MSM & CetylPure; Natrol Glucosamine 1500mg Chondroitin 1200 mg; Natrol Glucosamine Omega-3; and Natrol Hyaluronic Acid MSM & Glucosamine.

-3-

Litigation.  Judge J. Frederick Motz, to whom we assign this litigation, is an experienced transferee judge.  We are confident he will steer this litigation on a prudent course.

IT IS THEREFORE ORDERED that pursuant to 28 U.S.C. § 1407, the actions listed on Schedule A are transferred to the District of Maryland and, with the consent of that court, assigned to the Honorable J. Frederick Motz for coordinated or consolidated pretrial proceedings.

PANEL ON MULTIDISTRICT LITIGATION

_____
John G. Heyburn II
Chairman

| | |
|---|---|
| Marjorie O. Rendell | Charles R. Breyer |
| Lewis A. Kaplan | Sarah S. Vance |
| Ellen Segal Huvelle | R. David Proctor |

**IN RE: NATROL, INC., GLUCOSAMINE/CHONDROITIN
MARKETING AND SALES PRACTICES LITIGATION**     MDL No. 2528

## SCHEDULE A

Southern District of California

DAO v. NATROL, INC., ET AL., C.A. No. 3:13-02433

Northern District of Illinois

NOWICKI v. NATROL, INC., C.A. No. 1:13-03882

Eastern District of New York

EISNER v. NATROL, INC., C.A. No. 2:13-05831